

# IN THE
# TENTH COURT OF APPEALS

### No. 10-10-00297-CR

**GREGG CARL BAIRD,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**


**From the 272nd District Court
Brazos County, Texas
Trial Court No. 09-02494-CRF-272**

## O P I N I O N

Appellant Gregg Baird was charged with committing thirteen counts of possession of child pornography.  After the trial court denied Baird's motion to suppress, Baird pleaded guilty.  Under the plea bargain, Baird pleaded guilty to ten of the counts, the State agreed to dismissal of ninety unadjudicated offenses (by the application of Penal Code section 12.45), and the parties waived a jury without reaching a punishment agreement.  After a punishment hearing, the trial court accepted Baird's guilty plea and assessed a ten-year sentence on count 1, a five-year sentence on count 2

(cumulated on count 1's sentence), and a ten-year sentence on count 3 (suspended for ten years of community supervision). The sentence on each remaining count was assessed at ten years, to be served consecutively with count 1's sentence.

Baird raises two issues: (1) the trial court abused its discretion by denying Baird's second amended motion to suppress evidence; and (2) the trial court abused its discretion by overruling objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence.

### Suppression

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But

when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Johnson*, 68 S.W.3d at 652-53.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

The evidence at the suppression hearing shows that Baird hired Dawn Killian, who casually knew Baird through her boss, to stay at his home and to care for his dog while he was on a ten-day vacation to Panama with his parents. She met with Baird twice at his home, first to meet the dog, and second, on the day of Baird's departure, to be shown around the house. In the second meeting, Killian said that Baird walked her through the house and told her to "help yourself to everything," which he also said when he showed her the kitchen. Baird showed her how to operate his television and stereo.

Killian said that Baird also walked her through his bedroom and bathroom and told her to keep his bedroom door closed (both when she was and was not in the home) because he did not want his dog in the bedroom. Killian was to stay in a guest

bedroom. Baird had a roommate who had his own bedroom and office, and Baird indicated that those were places that Killian and the dog would not be going in. Killian testified that Baird did not specifically tell her where she could and could not go in the house and that he did not specifically instruct her to not go into his bedroom or that anything was "off limits."

On the evening of May 8, 2009, Killian went into Baird's bedroom to use his computer to try to copy two songs from a music CD to her new phone. Baird had not specifically told her not to use his computer, nor did he specifically tell her that she could use it. The computer was on but in sleep mode, and when she moved the mouse, the computer's desktop came on. A password was not needed to access the computer. After copying the songs to the computer and then realizing it would be more complicated to get them on her phone, Killian decided to delete the songs. She went into the "recent documents" folder to delete the songs and saw file names suggestive of child pornography. She next opened the "recycle bin" and saw thumbnail images of child pornography and then began playing a video that depicted child pornography.

After anonymously consulting with others in an online forum and then discussing it with people she knew, Killian reported what she had seen on Baird's computer to the College Station police. A search warrant was obtained and executed, and child pornography was found on several devices seized from Baird's home.

Baird testified at the suppression hearing. He said that he never gave Killian permission to enter his bedroom or to use his computer, and he disputed that he even showed her his bedroom. But he admitted that, other than telling her to keep the

bedroom door closed so that the dog could not go in there, he did not specifically tell her to stay out of his bedroom or to not use his computer. Baird also admitted that his roommate had permission to use, and did use, Baird's computer. Baird thought he had turned off the computer before he left on vacation.

Baird moved to suppress the evidence obtained in the search under Code of Criminal Procedure article 38.23(a),[1] arguing that in entering his bedroom and accessing his computer, Killian committed the offenses of criminal trespass[2] and breach of computer security.[3]

In denying the motion to suppress, the trial court made findings of fact and conclusions of law. When a trial court makes explicit fact findings, we are to determine whether the evidence, viewed in the light most favorable to the trial court's ruling, supports the fact findings. *Kelly,* 204 S.W.3d at 818. Baird first challenges several of the trial court's findings of fact, complaining that they are not supported by, and are contrary to, the evidence.

The trial court found that Baird placed no limits or restrictions on Killian's access to his home, bedroom, or computer and that Baird told her to "help herself to anything," or words to that effect. Baird emphasizes that both he and Killian testified

---

[1] TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the … laws of the State of Texas … shall be admitted in evidence against the accused").

[2] TEX. PENAL CODE ANN. § 30.05(a)(1) (West Supp. 2011); *see Allison v. State,* 113 S.W.3d 476, 478 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (recognizing that effective consent to enter a residence does not extend to rooms in which the owner has manifested intent to exclude others).

[3] TEX. PENAL CODE ANN. § 33.02(a) (West Supp. 2011); *see, e.g., Muhammed v. State,* 331 S.W.3d 187, 192-93 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

that Baird did not affirmatively give her explicit permission to go into his bedroom or to use his computer. But, it is undisputed that he did not tell her *not* to go into his bedroom and *not* to use his computer, and it is undisputed that, in telling her to keep his bedroom door shut at all times, it was said in conjunction with his desire to keep the dog out of his bedroom. Killian said that Baird told her more than once—and not just in the kitchen in reference to food and drink—to help herself to anything.[4] Because we must view the evidence in the light most favorable to the trial court's ruling, and because the trial court judges the credibility of the witnesses and the weight to be given their testimony, *Wiede*, 214 S.W.3d at 24-25, these findings are supported by the evidence.[5]

Baird also complains of the findings that he took no steps to protect the information on his computer through the use of passwords or other such methods (it is not disputed that the computer was not password-protected) and that Killian's access to

---

[4] In an attempt to show that he did restrict her access, Baird asserts that the record shows that he communicated to Killian that she was not to enter the roommate's bedroom or office, but her testimony does not support that assertion:

> Q.      Okay. And after you went through the house with Mr. Baird on this particular occasion, just before he left, did he indicate to you that anything was off limits?
>
> A.      He did point out that the spare - - there was a roommate and this was the roommate's bedroom and that this was the roommate's office. You know, kind of indicating that those were probably places that neither I or the dog would be going. But, no, he said help yourself to everything.
>
> …
>
> Q.      … With respect to the roommate's room and his bathroom or study, I guess, did he specifically tell you not to go in there or just - -
>
> A.      No, but I would just assume, you know, that they're roommates.

[5] The trial court specifically found that Killian was credible.

the bedroom and computer was reasonably foreseeable to Baird. These complaints depend on Baird's interpretation that, by telling Killian to keep the bedroom door closed to keep the dog out, he was restricting *her* access to both the bedroom and the computer that was in it. Based on Killian's and Baird's testimony and the trial court's determination of Killian's credibility, we reiterate that these findings are supported by the evidence.[6]

If a defendant challenges the admissibility of evidence under article 38.23(a) on the ground it was wrongfully obtained by a private person in a private capacity, the defendant must establish that the private person obtained that evidence in violation of law. *Mayfield v. State,* 124 S.W.3d 377, 378 (Tex. App.—Dallas 2003, pet. ref'd). Baird challenges the trial court's conclusions that, in discovering the evidence on Baird's computer, Killian did not commit any criminal offense and specifically did not commit the offenses of criminal trespass or breach of computer security. A common element of both of these offenses is the absence of effective consent. *See* TEX. PENAL CODE ANN. § 30.05(a); *id.* § 33.02(a). The trial court concluded that Killian had Baird's effective consent to access his bedroom and computer.

Consent means assent in fact, whether express or apparent. TEX. PENAL CODE ANN. § 1.07(a)(11) (West Supp. 2011). Consent is not effective if: (A) induced by force, threat, or fraud; (B) given by a person the actor knows is not legally authorized to act for the owner; (C) given by a person who by reason of youth, mental disease or defect,

---

[6] Baird complains of two other findings, but because we agree with his assertion that they are "meaningless to the controversy at hand," we need not address them.

or intoxication is known by the actor to be unable to make reasonable decisions; or (D) given solely to detect the commission of an offense. *Id.* § 1.07(a)(19).

Baird maintains that these conclusions are erroneous because they are based on the above-discussed allegedly faulty findings, which we have upheld. And while we agree that the evidence shows that Baird did not give his express consent to Killian to access his bedroom and computer, the evidence supports a finding of apparent, and thus effective, consent, as discussed above. Because these conclusions are supported by the evidence, the trial court did not err in concluding that Killian did not commit the offenses of criminal trespass or breach of computer security because she had Baird's effective consent.[7] The trial court did not err in denying Baird's motion to suppress. We overrule issue one.

### Punishment Evidence

Baird's second issue complains of the admission of evidence in the punishment hearing, which was before the trial court.[8] The State offered evidence of adult pornographic material obtained from Baird's computer, including Baird's online chats of a sexual nature. The trial court overruled Baird's objections that the use of such

---

[7] Baird also complains of the trial court's conclusion that Baird had no reasonable expectation of privacy in the contents of his computer. *See Granados v. State,* 85 S.W.3d 217, 222-23 (Tex. Crim. App. 2002) (accused has standing to contest search under Fourth Amendment only if he had legitimate expectation of privacy in place that government officials or agents invaded). We need not address this issue because the Fourth Amendment is not implicated with a private actor like Killian. *See Brackens v. State,* 312 S.W.3d 831, 837 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see also U.S. v. Jacobsen,* 466 U.S. 109, 117-18, 104 S.Ct. 1652, 1658-59, 80 L.Ed.2d 85 (1984).

[8] For purposes of Rule of Appellate Procedure 25.2(a)(2), this case is a plea-bargain case—a charge bargain. *See Shankle v. State*, 119 S.W.3d 808, 813 (Tex. Crim. App. 2003); TEX. R. APP. P. 25.2(a)(2); *see also Kennedy v. State*, 297 S.W.3d 338, 341-42 (Tex. Crim. App. 2009). The trial court permitted Baird to appeal this issue. *See* TEX. R. APP. P. 25.2(a)(2)(B).

evidence violated his due-process rights under *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003). The trial court also overruled the same objections to questions to Baird on cross-examination about his seeking out adult sexual partners on the internet for consensual homosexual encounters.

We review a trial court's ruling on the admissibility of evidence for abuse of discretion. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). "Under an abuse of discretion standard, an appellate court should not disturb the trial court's decision if the ruling was within the zone of reasonable disagreement." *Bigon v. State,* 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

In its opening statement, the State's prosecutor explained its reasons for offering the evidence at issue:

> The only thing that I think will be an issue for the Court or an issue for [defense counsel] is that while we want to give the Court as full a picture as we can of both the child pornography possessed by the Defendant, we also want to give the Court pursuant to what we normally do in the punishment phase as full a picture of the Defendant as we can.
>
> There will be a couple of exhibits that will be offered to show the Defendant, photographs that were taken from the Defendant's computer of himself in, I think, what can be charitably described as deviant sexual contact involving bondage, sadomasochism, that sort of thing.
>
> I do want to make it clear that we are not offering any evidence for the purpose of trying to bias the Court or any person against this Defendant because he may or may not be gay. We are only attempting to give the Court a full picture of this Defendant's sexual proclivities, the extent to which he will go to indulge in those sexual proclivities so the Court can make, I think, a just evaluation of basically redeemability, danger to the community and to ultimately provide a just sentence.

The State then offered the following specific evidence over Baird's objections: photographs of Baird in bondage and sadomasochistic poses similar to poses of children in Baird's child pornography photographs; photographs of nude young men engaging in sexual conduct in camping situations; Baird's nonsexual photographs of actual boy scouts on camping trips (Baird was a scout leader); internet chat sessions regarding sexual activity, including wearing sexual devices, and meeting for sex. None of this evidence pertained to any images or information of Baird having sexual contact with a child.

Baird's second issue specifically asserts that the trial court abused its discretion by overruling his objections to the admissibility of constitutionally protected conduct offered by the State as punishment evidence. The gist of Baird's argument is that evidence of constitutionally protected homosexual conduct was not proper punishment evidence, was offered by the State "solely" to impermissibly obtain a harsher punishment, and could not play a part in the trial court's sentencing decision.

Section 3(a) of Article 37.07 of the Code of Criminal Procedure grants trial courts broad discretion to admit evidence during the punishment phase. The relevant statutory language is:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally

responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a) (West Supp. 2011). "[T]he admissibility of evidence at the punishment phase of a non-capital felony offense" trial "is" really "a function of policy rather than relevance." *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006); *accord Miller-El v. State*, 782 S.W.2d 892, 894-95 (Tex. Crim. App. 1990). "Evidence is 'relevant to sentencing,' within the meaning of" Article 37.07, Section 3(a), "if the evidence is 'helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case.'" *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007) (quoting *Rodriguez*, 203 S.W.3d at 842). Punishment evidence need not be evidence of an illegal act. *See Cox v. State*, 931 S.W.2d 349, 357 (Tex. App.—Fort Worth 1996), *pet. dism'd, improvidently granted*, 951 S.W.2d 5 (Tex. Crim. App. 1997); *see also Whittle v. State*, No. 02-03-00125-CR, 2004 WL 102346, at *1 (Tex. App.—Fort Worth Jan. 22, 2004, pet. ref'd) (mem. op., not designated for publication).

Baird's complaint is grounded not on the evidence's lack of relevance to punishment, but on the alleged impermissible burden by the State on his constitutionally protected sexual conduct. However, the Constitution is not a *per se* barrier to the admission of evidence merely because the evidence involves conduct that is constitutionally protected. *See Davis v. State*, 329 S.W.3d 798, 805 (Tex. Crim. App. 2010) ("However, the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs and associations at sentencing merely because those

beliefs and associations are protected by the First Amendment."), *cert. denied,* 132 S.Ct. 128 (2011); *see also Dawson Delaware,* 503 U.S. 159, 165, 112 S.Ct. 1093, 1097, 117 L.Ed.2d 309 (1992); *Mason v. State,* 905 S.W.2d 570, 576 (Tex. Crim. App. 1995); *Woodward v. State,* 170 S.W.3d 726, 729 (Tex. App.—Waco 2005, pet. ref'd).[9]  Such evidence may be admissible if it is shown to be relevant to the issues involved in the case.  *Davis,* 329 S.W.3d at 805; *Mason,* 905 S.W.2d at 576-77.

The State argues that this evidence was relevant to Baird's punishment, including his suitability for community supervision, by first pointing out that the evidence, other than Baird's camping photographs of scouts, meets the Penal Code's description of "sexual conduct:"  "sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, … ."  TEX. PENAL CODE ANN. § 43.25(a)(2) (West 2011); *id.* § 43.26(b)(2) (West Supp. 2011).

From that, the State argues that Baird's photographs were evidence that his "interests extended far beyond electronic voyeurism" and "showed that he maintained an active sexual appetite, exhibiting unsafe sexual practices with strangers, creating photos to mirror poses with the depicted victims,[10] and evincing a continuing fixation [on] a variety of sexual activities."  Accordingly, the State concludes, this evidence was relevant to the assessment of an appropriate punishment for the offenses of possession

---

[9] We see no reason why the reasoning of these cases, which involve First Amendments rights, should not apply to this case.  *See Davis,* 329 S.W.3d at 805 n.4.

[10] A State's witness testified that Baird had pornographic photographs of children in bondage and sadomasochistic positions and photographs of himself in similar poses.

of child pornography, including whether the trial court believed Baird's "protestation that he would never act on his continued attraction to underage boys" and Baird's suitability for community supervision (which Baird did seek).[11]

Considering the evidence at issue and the State's arguments for its admissibility, we conclude that it was within the zone of reasonable disagreement for the trial court to admit this evidence.[12] *See Davis,* 329 S.W.3d at 805-06; *see also Whittle,* 2004 WL 102346, at *1 (in appeal of child pornography conviction, holding trial court did not abuse its discretion in admitting, during punishment, evidence of cartoons depicting child pornography that were not illegal). Issue two is overruled.

Having overruled both issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed January 11, 2012
Publish
[CR25]

---

[11] Baird admitted that he had a sexual attraction to young boys, said he had been receiving professional help and had made some progress, and said he would continue with that if placed on community supervision.

[12] In one of the online chats, Baird wrote that his sexual urge at that particular time was a "ticking time bomb." In announcing his sentence, the trial judge referenced this chat and his concern for that bomb "from going off and damaging some child." This piece of evidence and its use by the trial judge in sentencing illustrate its relevance. *See Davis,* 329 S.W.3d at 805 (evidence of constitutionally protected conduct may be admissible if it shown to be relevant to issues involved in case).